**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2018**

# In the Court of Appeals of Georgia

A17A1431. LEAVINS v. NAYAN CORPORATION et al.

BARNES, Presiding Judge.

While a guest at a hotel, Marjary Dianne Leavins was injured when she slipped and fell as she was showering in a bathtub. Complaining about the condition of the bathtub, Leavins sued the hotel's owner and operator, Nayan Corporation and MSR Fitzgerald, LLC (collectively, "Hotel Defendants"). The Hotel Defendants procured summary judgment, and Leavins appeals. Because Leavins has demonstrated no error in that ruling, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the

nonmovant." (Citation and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

So viewed, the record shows the following. At about 6:00 p.m. on July 28, 2013, sixty-five year old Leavins and her adult daughter, both residents of Panama City, Florida, arrived at the Quality Inn hotel located in Fitzgerald, Georgia. The daughter had pre-booked that hotel for their overnight lodging; the next day, they were planning to visit a family member nearby. Leavins was suffering from rheumatoid arthritis, so during check-in, they asked the desk clerk to place Leavins in either a handicap accessible room or a room located on the first floor. Neither such room was available, and Leavins and her daughter accepted and retired to the adjacent rooms offered by the desk clerk. As the daughter explained, the rooms were "only two flights up, . . . and it was late, and I couldn't even fathom trying to find a motel in Fitzgerald, Georgia, in the evening the night before I had somewhere to be with my mother."

The underlying "slip and fall" occurred the next morning. Leavins described in her deposition that when she stepped into the bathtub, no water was in the bathtub, and the bathtub appeared clean. As Leavins recounted, "I got in there and turned on the water, and then I got the soap and started to lather myself. And then, all of a

2

sudden, my feet just went out from under me and . . . I went all the way down."
Leavins crawled out of the bathtub, walked to her cellphone, and summoned her
daughter. Her daughter appeared from the adjacent room, and helped Leavins
complete her dressing. The pair checked out of their rooms, left the hotel, and visited
their family member later that day.

During her deposition, Leavins answered questions about why she had fallen:

Q:    Why do you think you fell?
A:    The tub was slippery.
Q:    Do you know the industry standards for bathtub's slipperiness?
A:    No.
. . .
Q:    Did you take a look at the condition of the bathtub after you fell?
A:    No, my daughter did that.
Q:    Why do you think the bathtub was slippery?
A:    I have no idea. . .
. . .
Q:    I just want to make sure that I get this. You think that you – why
do you think that you slipped in the tub?
A:    Because I could tell the slipperiness of it. I mean, I was standing
and my feet went like this (indicating), so to me, that was a slip.
Q:    Why was this tub slippery?
A:    I don't know.

When Leavins's daughter was deposed, she was asked about her observation of the bathtub. She answered, "There was water in the tub, and I ran my hand across the tub and realized it was very slick. . . . There wasn't a lot of soap." She, too, was asked why her mother had fallen:

Q:      Do you have an opinion as to why your mom fell?
A:      The tub was slick. It was very slick.
Q:      What made it slick?
A:      I don't know. . . .

In her suit against the Hotel Defendants, Leavins pursued two theories of liability. First, she claimed that the Hotel Defendants were liable for negligence per se, relying on a rule promulgated by the Georgia Department of Public Health regarding Tourist Accommodations, which states that "[a]nti-slip tubs slip strips, appliques, or slip-proof mats shall be provided in each bathing facility and shall be kept clean and in good repair." Ga. Comp. R. & Regs. 511-6-2-.08 (10) ("Rule"). Second, Leavins claimed that the Hotel Defendants were liable for failing to keep their premises safe, asserting that "[they] had superior knowledge of the hazard posed by the slippery bathtub." See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises

4

for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

The Hotel Defendants moved for summary judgment. They argued that the Rule had not been in effect at the time of Leavins's stay at the hotel. Furthermore, they argued that Leavins had failed to show that her injuries were caused by any breach of duty on their part. In particular, the Hotel Defendants asserted that Leavins had failed to make the requisite showing that the bathtub presented an unreasonable risk of harm. And even if Leavins made that showing, the Hotel Defendants went on to argue, Leavins had failed to show that they had superior knowledge of it.

In support of their summary judgment motion, the Hotel Defendants relied upon the testimony given by Leavins and her daughter as outlined above; they also relied upon testimony given by the hotel's manager who had been in charge of maintenance at the hotel during Leavins's stay. Serving as the Hotel Defendants' OCGA § 9-11-30 (b) (6) witness, that manager described safety features of the bathtub: A "built-in aspect of the molded tub" was a "bar" that "you could reach your hand all the way around"; and "manufactured" in "the bottom of the tub" was a "raised bumpy area." And prior to Leavins's incident, the manager further deposed, no guest had ever reported to hotel management a slip and fall sustained in any of the

5

hotel's bathtubs so designed. The Hotel Defendants further presented evidence of the policies and procedures for regular cleaning and inspections of the hotel's guestrooms, including the bathrooms.

Granting summary judgment to the Hotel Defendants, the trial court determined that Leavins's claim premised upon negligence per se failed because the cited Rule was not in effect on the pertinent date. Furthermore, the court determined that, because Leavins had failed to show that the condition of the bathtub floor presented the requisite risk of harm, cases such as *Bryant v. DIVYA*, 278 Ga. App. 101 (628 SE2d 163) (2006), foreclosed her claim premised upon an owner's or occupier's statutory duty to its invitees.

1. Leavins contends that the trial court erred in granting summary judgment on her negligence per se claim, maintaining that the Hotel Defendants were in violation of the Rule's requirement to have "[a]nti-slip tubs slip strips, appliques, or slip-proof mats" on the floor of the bathtub.

The trial court correctly determined, however, that when Leavins slipped and fell (on July 28, 2013), that Rule was not in effect. See Ga. Comp. R. & Regs. 511-6-2-.23 ("These regulations shall become effective on January 1, 2014."). Consequently, this contention provides no basis to disturb the summary judgment. See generally *Griswold v. Collins*, 318 Ga. App. 556, 560 (3) (734 SE2d 425) (2012) (recovery under negligence per se theory requires plaintiff to show, inter alia, that she is within class of persons the regulation was intended to protect); *Bryant*, 278 Ga. App. at 102-103 (determining that summary judgment was properly granted on negligence per se claim, where plaintiff who slipped and fell in the shower failed to offer any evidence indicating that the shower stall violated any safety codes).

2. Leavins contends that the trial court erred by granting summary judgment on her claim premised upon an owner's or occupier's statutory duty to its invitees, citing undisputed evidence that, at the time of her slip and fall, the bathtub was "slippery" and/or "slick." Leavins maintains that "[the Hotel Defendants] breached the duty owed to [her] to [keep] their premises . . . free from a hazardous condition which could cause harm and the [Hotel Defendants] either knew, or should have known, of the dangerous condition of the tub on their premises[.]" Leavins adds,

"[T]he [Hotel Defendants] owed a duty of care to [her] to ensure that their premises [were] free from a hazardous condition."

(a) The trial court correctly found that *Bryant*, 278 Ga. App. at 101, was dispositive of Leavins's claim based upon an owner's or occupier's statutory duty to its invitees. As *Bryant* makes clear,

> An owner or occupier of land has a statutory duty to keep its approaches and premises in a reasonably safe condition for invitees.[1] But an owner or occupier of land is not an insurer of the safety of its invitees. Rather, in premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an *unreasonable risk of harm*. Recovery is allowed only when the proprietor had knowledge and the invitee did not.

(Citations, punctuation, and footnotes omitted.) Id. at 102.

In *Bryant*, a motel guest stepped into the shower stall of her motel room, turned on the water, began using the soap, then slipped and fell. *Bryant*, 278 Ga. App. at 101. In her ensuing premises liability suit against the motel's owner, the guest alleged that the owner had failed to have sufficient anti-slip strips on the shower floor. Id.

---

[1] OCGA § 51-3-1.

8

The trial court granted summary judgment to the owner, and this Court affirmed. Id. This Court cited the guest's testimony that when she entered the shower stall, the shower floor was dry and not slippery; and that after she turned on the water and began using the soap, the shower floor became slippery. Id. This Court discerned that, other than the substance(s) that the guest herself had used, the guest had alleged no transient foreign substance that had been on the shower floor and had thus caused her to fall. Id. at 102. Further, this Court noted that the guest had offered no expert testimony that the shower floor had been hazardous, nor had she provided any evidence that the shower violated any safety codes. Id. Explaining that summary judgment was proper because the guest had "presented no competent evidence that the shower floor . . . was hazardous other than her fall and her and her companion's testimony that they believed the anti-slip strips . . . were inadequate," this Court reiterated that "[m]ere speculation . . . is not enough to defeat summary judgment," and that "proof of a fall, without more, does not give rise to liability on the part of a proprietor." Id.

In the instant case, Leavins testified that the bathtub was dry and clean before she stepped into it. The only evidence of a transient substance that created the slippery or slick condition of the bathtub floor was the combination of water and

9

soap, which Leavins admittedly was using to lather her body. Leavins offered no expert testimony that the bathtub itself was somehow unreasonably hazardous, nor did she show that the bathtub was in violation of any applicable safety code. Indeed, Leavins proffered no evidence that the bathtub presented a hazard other than her fall and her and her daughter's testimony that they believed that the bathtub was "slippery" and/or "slick." Because Leavins's claim lacked evidence that the bathtub presented an *unreasonable* risk of harm, the trial court correctly granted the Hotel Defendants summary judgment. See *Bryant*, 278 Ga. App. at 101-103; see also *Dickerson v. Guest Servs. Co.*, 282 Ga. 771, 772 (653 SE2d 699) (2007) (citing the "common-sense notion that everyone knows that wet surfaces can become slippery" and reiterating that a proprietor "may be liable only if he had superior knowledge of a condition that exposed an invitee to an *unreasonable* risk of harm") (emphasis supplied);[2] *Oliver v. Columbia Sussex Corp.*, 391 Fed. Appx. 840 (11th Cir. 2010)

---

[2] Other states have similarly held in bathroom slip-and-fall cases that plaintiffs must be charged with knowledge that bathtubs are slippery when wet. See, e. g., *Miller v. Shull*, 48 So2d 521, 522 (Fla. 1950) ("[I]t is a matter of common knowledge – and one which most of us know through painful experience – that a small amount of water in the bottom of a bath tub creates a slippery condition."); *Jones v. Abner*, 335 SW3d 471, 476 (Ky. App. 2011) (finding no duty to equip bathtub with safety strips or hand-holds inasmuch as the risks inherent in bathing and showering in bath tubs were open, apparent, and obvious to anyone who had ever taken a bath or shower); *Dempsey v. Alamo Hotels*, 76 NM 712, 718 (418 P2d 58) (1966) ("[I]t is common knowledge that a smooth enamel or porcelain

10

(applying Georgia law to affirm summary judgment to hotel owner sued by guest who had slipped and fallen in bathtub inside guest's room, where guest failed to support with competent evidence his speculation that either a degraded slip-resistant surfacing in the tub or the presence of some cleaning solution had made the tub slippery and caused him to fall). Accord *Paggett v. The Kroger Co*., 311 Ga. App. 690, 691 (1) (716 SE2d 792) (2011) (where the plaintiff slipped and fell outside on a rainy day in a substance that made his clothing wet, plaintiff's mere conjecture that the substance might have been something other than rainwater fell short of establishing a genuine issue of material fact on the existence of a dangerous condition), rev'd on other grounds, *Phillips v. Harmon*, 297 Ga. 386, 398 (II), n. 10 (774 SE2d 596) (2015); *Pennington v. WJL, Inc*. 263 Ga. App. 758, 760 (1) (589 SE2d 259) (2003) (holding that where plaintiff cannot prove that she was injured by an unreasonable risk existing on the premises, there can be no recovery, because "[a] mere possibility of causation is not enough and when the matter remains one of pure speculation or conjecture and the probabilities are at best evenly balanced it is appropriate for the court to grant

surface becomes slippery when water is applied to this surface. It is also common knowledge that it becomes even more slippery when water and soap are both applied."); *Kutz v. Koury Corp*., 93 NC App. 300, 304 (377 SE2d 811) (1989) ("It is common knowledge that bathtub surfaces, especially when water and soap are added, are slippery.").

summary judgment to the defendant"); *Lee v. Food Lion*, 243 Ga. App. 819, 820 (534 SE2d 507) (2000) ("The mere occurrence of an injury does not create a presumption of negligence.").

(b) Finally, Leavins claims that the Hotel Defendants are chargeable with having constructive knowledge, asserting that the Hotel Defendants' evidence left as a disputed issue whether they had complied with reasonable inspection procedures. See generally *Fred's Stores of Tenn. v. Davenport*, 307 Ga. App. 58, 59 (1) (703 SE2d 700) (2010) (noting that constructive knowledge may be proved with evidence that the allegedly hazardous condition had existed for a sufficient length of time such that, had the proprietor exercised reasonable care in inspecting the premises, it would have been discovered and removed).

But even if Leavins is correct, that evidentiary dispute would not provide a basis for disturbing the summary judgment. As explained above,[3] Leavins failed to make the required showing that the bathtub presented an unreasonable risk. And it is well settled that, if there is no evidence sufficient to create a genuine issue as to *any* essential element of plaintiff's claim, that claim "tumbles like a house of cards," and "[a]ll of the other disputes of fact are rendered immaterial." *Lau's Corp. v. Haskins*,

---

[3] See Division 2 (a).

12

261 Ga. 491, 491 (405 SE2d 474) (1991); see *Paggett*, 311 Ga. App. at 691-692 (1) (explaining that even if a factual question remained as to whether the defendant maintained reasonable inspection procedures upon the premises, summary judgment was proper because the plaintiff failed to evince that he had been exposed to an unreasonable risk of harm, and "without [such] evidence. . ., there can be no evidence that the defendant had any knowledge of [unreasonable] danger, and therefore no recovery for the plaintiff"). Accord *Chastain v. CF Ga. North DeKalb*, 256 Ga. App. 802, 803 (569 SE2d 914) (2002) ("If there is no evidence that the [defect] could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect.").

*Judgment affirmed. McMillian and Mercier, JJ., concur.*